IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WARREN T. FLETCHER, #161063        \*
      Plaintiff,
      v.                                    \*    CIVIL ACTION NO.  WMN-10-3314

STATE OF MARYLAND, *et al*.          \*
      Defendants.
                                           \*\*\*

**<u>MEMORANDUM</u>**

**I.  Procedural History**

Warren T. Fletcher ("Fletcher") is an inmate housed at the North Branch Correctional Institution ("NBCI").  On November 19, 2010, the Court received for filing his 42 U.S.C. § 1983 Complaint[1] raising generalized claims regarding the "arbitrary" formulation of policies and criteria for admission to the NBCI Behavioral Management Program ("BMP") for "illegal purposes" such as compromising, punishing, discriminating and retaliating against inmates.  He states the BMP has been designated with "excessive" punitive segregation sanctions and NBCI inmates have been subject to "longer period of pain and suffering while housed on the segregation unit."  ECF No. 1.  Fletcher was directed to supplement his Complaint and has done so.  See ECF Nos. 10 & 11.  He again complains that Defendants have formulated their own policies and regulations regarding BMP assignment and acceptance and he has been denied entry into the BMP in retaliation for his filing complaints regarding the alleged unethical and "sexual" activities of prison psychology staff.  Fletcher seeks declaratory and injunctive relief, along with compensatory, nominal, and punitive damages.

---

[1]    Although Fletcher cites to 28 U.S.C. §§ 1331 & 1367, the case has been construed as a 42 U.S.C. § 1983 action against State officials and employees.

On August 16, 2011, Defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF No. 40. Fletcher has filed Oppositions thereto. ECF Nos. 44 & 46. Upon review of the pleadings, the Court finds an oral hearing unnecessary. The case may be decided on the pleadings. *See* Local Rule 105.6. (D. Md. 2011).

**II.    Standard of Review**

Summary judgment is appropriate under Rule 56(a) of the Federal Rules of Civil Procedure when there is no genuine dispute as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial. The Court must "view the evidence in the light most favorable to … the nonmovant, and draw all reasonable interferences in [its] favor," *Dennis v. Columbia*

*Colleton Med. Ctr., Inc.* 290 F. 3d 639, 645 (4th Cir. 2002), but the Court also "must abide by the affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Baltimore Ravens Football Club, In.,* 346 F. 3d 514, 526 (4th Cir. 2003).

**III.    Discussion**

1.    Facts

According to the record presented to the Court, Fletcher was sent to NBCI on January 27, 2009, and placed on disciplinary segregation. Transfer was triggered due to an increase in his status to maximum security based upon his disciplinary segregation term. ECF No. 40, Exs. 1-3. Fletcher was transferred out of NBCI via the Interstate Corrections Compact ("ICC") on March 11, 2010, and returned to NBCI on May 18, 2010. *Id.*, Ex. 4. He remained on administrative and disciplinary segregation until June 7, 2010, when he was assigned to general population. Approximately three weeks later he was assigned to administrative segregation and was placed back on disciplinary segregation on July 17, 2010. ECF No. 40, Ex 1.

Maryland inmates are individually screened for the BMP,[2] which is exclusively offered at NBCI. Fletcher was recommended for screening by the BMP Admissions, Review, and Discharge ("ARD") committee on or about April 8, 2009. *Id.*, Ex 9. The committee noted that Fletcher had a number of high category adjustment convictions and had a documented history of using threatening language and tampering with security equipment. Upon completion of a psychological evaluation, Fletcher was approved for the BMP on April 21, 2009. Defendants affirm that the process to complete the assignment takes approximately six to eight weeks.

---

[2]    According to Defendants, the BMP is based on the cognitive behavioral management or Quality of Life program model. The Division of Correction may assign an inmate to the BMP who is determined to be involved in or associated with the potential for violent behavior that threatens the safety of others or the good order of a facility.

Fletcher had his initial review for the BMP on June 4, 2009, and signed all necessary consent forms in the ensuing two weeks.  On June 20, 2009, he was convicted of an infraction, sanctioned with 150 days of disciplinary segregation, and placed on a special management meal ("food loaf").  Fletcher was removed from the BMP early in July of 2009, due to the infraction. It was also noted that he had been kicking his door, covering his window, refusing recreation and food loaf, and cursing and threatening prison staff.  He was informed that he could request placement anew in the BMP once he had served half his disciplinary segregation sentence.  ECF No. 40, Exs. 9 & 14.

Fletcher was evaluated for but denied a voluntary ICC transfer in August 2009.  He submitted a request for BMP placement and was essentially told that he had not yet served half his disciplinary segregation term.  He was further informed that the decision regarding BMP placement solely rested with the BMP committee upon approval by the NBCI Warden.  *Id*., Ex. 2.  On December 30, 2009, a BMP team review was conducted.  Previous notes showed that Fletcher had indicated that he only wanted to be in the BMP to keep busy, he did not want to change, and he did not believe the program would be beneficial.  While before the BMP review committee, however, he acknowledged that he wanted to change and his prior remarks were made in haste.  *Id*., Ex. 9. It was further noted that he had completed the program "Taking a Chance on Change."  Fletcher was approved for placement and was informed he could sign back in on the BMP.  On January 7, 2010, however, Fletcher refused to sign in and appear at the BMP review meeting because he was too "weak" from a hunger strike.  ECF No. 40, Ex. 23.

Over the course of the next several months the record shows that Fletcher sent letters to case management staff requesting reinstatement to the BMP.  Defendants claim that a number of the letters were threatening in nature.  *Id*., Ex. 25.  On August 20, 2010, Fletcher was evaluated

4

by psychologist Clarence Hawkins, who noted paranoid symptoms. *Id.*, Ex. 26. That same day, Fletcher was assessed and *not* recommended for admission to the BMP by the review committee which observed that Fletcher had previously engaged in behavioral problems while on the BMP and had refused to attend a review meeting to be reinstated on the program. Due to Axis II mental health and behavioral problems, Fletcher was found not to be a good candidate for the BMP. *Id.*, Exs. 9 & 26. He remains on disciplinary segregation. *Id.*, Ex. 1.

    2.    Legal Analysis

Fletcher's essential claim is that he was retaliated and discriminated against as he was denied admission to the BMP at NBCI. The Court finds no evidence of a constitutional violation.

Fletcher's records show that he has been evaluated for placement in the BMP on a number of occasions. In 2009, he was admitted to the BMP program but was terminated from the program based upon his behavioral activities. His later actions and mental health condition resulted in an Admission, Review, and Discharge ("ARD") committee determination that he did not meet the criteria for placement in the BMP. Defendants affirm that they did not submit false statements or retaliate against Fletcher for his complaints, nor did they tamper with his correspondence or photocopying.

Fletcher alleges that supervisory Defendants are liable under a respondeat superior theory. Fletcher again accuses Defendants of retaliating against him for filing Complaints and remedies and affirms that summary judgment should be entered in his favor. ECF No. 44. He additionally complains that he has been subject to false adjustment reports. In his Supplement, Fletcher discusses the basis for establishing a BMP in a State facility. ECF No. 46. He claims that he meets the psychological criteria for entry into the BMP and lists a number of "similarly

situated' inmates, the majority of whom do not currently meet the criteria for BMP assignment. *Id*.

Although a complaint need not contain detailed allegations, the facts alleged must be enough to raise a right to relief above the speculative level and require "more than labels and conclusions," as "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 553-54 (2007).

Retaliation against an inmate for the exercise of a constitutional right states a claim under 42 U.S.C. § 1983. *See American Civ. Liberties Union v. Wicomico County*, 999 F. 2d 780, 784-86 (4th Cir. 1993). The inmate alleging retaliation "[b]ears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial motivating fact in the prison officials' decision...." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). "'A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone.'" *Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)); *see also Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (conclusory allegations of retaliation insufficient to state claim). There is no dispute that Fletcher received adjustment reports and was classified to administrative and disciplinary segregation, as well as the BMP. He has failed to adequately rebut the personal declarations and materials to prove that Defendants issued the incident reports as a pay back for Fletcher's complaints.

In the prison context a liberty interest is created by the imposition of an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U. S. 472, 484 (1995). Following the reasoning of the Supreme Court in *Sandin*, the Court finds no liberty violation implicated in the decisions associated with Fletcher's

placement on segregation at NBCI, as it is not atypical for inmates to be placed on segregation for any number of reasons. *See Hewitt v. Helms*, 459 U.S. 460, 468 (1983); *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997). Fletcher was transferred to NBCI and remained on segregation. The Court finds there is nothing in the record which shows that the nature of Fletcher's assignments to segregation at NBCI comprised the atypical hardships contemplated by *Sandin* or *Beverati*. Therefore, such assignment does not implicate a liberty interest. Further, his transfer to NBCI after an increase in his security status does not in and of itself implicate a liberty interest; Fletcher has no entitlement to notice and an opportunity to be heard prior to his transfer as a prisoner has no liberty interest in being housed in any particular prison facility. *See Olim v. Wakinekona*, 461 U.S. 238, 244-45 (1983).

"The Equal Protection Clause generally requires the government to treat similarly situated people alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). To show that his equal protection rights were violated, Fletcher must demonstrate that he was treated differently than similarly situated inmates and the discrimination was intentional or purposeful. *See Williams v. Bitner*, 307 Fed. Appx. 609, 611 (3rd Cir. 2009). If the discrimination was based on his membership in a suspect class, the differential treatment must be narrowly tailored to a compelling interest; otherwise, Fletcher must show that the discrimination did not bear a rational relationship to a legitimate government purpose. *See Cleburne*, 473 U.S. at 440-42.

The materials show that NBCI staff were responsive to Fletcher's inquiries, and there is no evidence that he was treated in a discriminatory manner. He was repeatedly evaluated for BMP assignment, was approved, but was removed from the program due to his own behavior.[3]

---

[3] To the extent that Fletcher is complaining about false infractions, this allegation does not state a due process claim. In *Freeman v. Rideout*, 808 F.2d 949 (2nd Cir. 1986), the Second Circuit

There is no showing that any disapproval of his enrollment in the BMP caused him harm.  His Complaint is without merit.

### IV. Conclusion

For the aforementioned reasons, Defendants' dispositive motion, construed as a motion for summary judgment,[4] will be granted.   A separate order follows.


Date: February 22nd , 2012

/s/
_____
William M. Nickerson
Senior United States District Judge

---

concluded that with regard to alleged falsified evidence, due process is satisfied where an inmate is afforded the opportunity to confront and challenge the alleged perjured testimony offered in the reports. *Id*. at 953.

[4]   On August 10, 2011, Fletcher filed a Motion for Trial by Jury.  ECF No. 36.  Under Rule 38(b), a party must make a written demand for a jury trial, and the written jury demand must be served on the other party between the filing of the Complaint and fourteen days after the service of the last pleading directed to the issue triable by a jury.  The term "last pleading" refers to a pleading which contests the issue triable by a jury, such as an answer to a Complaint or a reply to a counterclaim. *See Donovan v. Travelers Trash Co.,* 599 F.Supp. 43, 44 (E.D. N.C. 1984). A motion to dismiss a complaint, however, is not considered a "last pleading" directed to an issue triable by a jury. *See United States v. Anderson,* 584 F.2d 369, 372 (10th Cir. 1978).  Finally, the written jury demand and the certificate of service must be filed with the Court as required by Fed. R. Civ. P. 5(d) within a reasonable time.  As no answer or reply had been filed at the time of Fletcher's Motion, the pleading is timely.  The Motion will be dismissed as moot in light of the Court's decision regarding Defendants' summary judgment motion.